**Russell D. Garrett**, OSB # 882111
E-mail:  russ.garrett@jordanramis.com
**Christopher K. Dolan**, OSB #922821
E-mail:  chris.dolan@jordanramis.com
JORDAN RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone:  (503) 598-7070
         Attorneys for Plaintiff Nathan Mart

FILED 21 MAR '18 12:39 USDC-ORE

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA, ex rel. NATHAN MART**, <br><br> Plaintiff, <br><br> v. <br><br> **SERENITY LANE**, <br><br> Defendant. | Case No. 6:18-CV-487-AA <br><br> **COMPLAINT** <br> Claims Pursuant to the False Claims Act, 31 USC sec. 3730 <br><br> Jury Trial Demanded – Filed Under Seal 31 U.S.C. § 3730(b)(2) <br><br> **[FILED IN CAMERA AND UNDER SEAL]** |

The United States of America, by and through *qui tam* originating relator Nathan Mart,

hereby bring this action pursuant to the False Claims Act ("FCA"), as amended, 31 U.S.C. §

3729 *et seq.*, by and through his attorneys, Brian H. Mahany and the Law Firm of Mahany Law,

together with Russell Garrett and Christopher Dolan and the Law Firm of Jordan Ramis PC

serving as local counsel and hereby declares the following to recover all damages, penalties, and

Page 1 - COMPLAINT

53518-76270 2958285_2\RH/3/20/2018

other remedies available as established by the FCA, which were caused by Defendant's repeated and deliberate submissions of false, fraudulent and intentionally deceptive records, claims, statements and representations, used and caused to be made, used and relied upon by the United States Government and the State of Oregon, under and through their Medicaid, Medicare, and other government funded health care programs.

Since at least 2015 through the present, Defendant is having non-certified, unsupervised, and unlicensed employees provide behavioral health services to patients and then billing government funded insurance companies as if those services were provided by a licensed, credentialed person. The services are falsely billed by using a credentialed Defendant employee's NPI number.

## THE PARTIES

1.    Plaintiff is the United States of America.

2.    Plaintiff-Relator Nathan Mart is a resident of the State of Oregon.

3.    Relator has first-hand knowledge of Defendant's billing practices through working as the as the Director of Outpatient Services from 2013 to 2018 in the 4211 W 11th Ave, Eugene, OR 97402 location.

4.    Serenity Lane is a private, not-for-profit treatment center that provides substance use disorder treatment services for alcohol and other drug addictions and offers inpatient and outpatient services. The principal place of business is 1 Serenity Lane, 91150 Coburg Industrial Way, Coburg, OR 97408.

5.    The president, CEO & Registered Agent is Mike Dyer, who is located at 91150 Coburg Industrial Way, Coburg, OR 97408.

53518-76270 2958285_2\RH/3/20/2018

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Plaintiff-Relator establishes subject matter jurisdiction under 31 U.S.C. § 3730(b).

7.      This Court has personal jurisdiction over the Defendant and is a proper venue pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a).

## FEDERAL FALSE CLAIMS ACTS

8.      Pursuant to 31 U.S.C. § 3729, "any person who--(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . . is liable to the United States Government." 31 U.S.C. § 3729.

9.      A private citizen, such as Relator, is allowed to bring actions on the government's behalf. "A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government." 31 U.S.C. § 3730(b)(1).

10.     Under 31 U.S.C. § 3730 (e), there has been no statutory relevant public disclosure of the allegation or transactions in this Complaint with respect to which Relators are not an "original source," and all material information relevant to this Complaint was provided to the United States Government prior to filing the Complaint pursuant to 31 U.S.C. § 3730(e)(4)(B).

11.     As described below, Serenity Lane contracted with the State of Oregon and the federal government to provide substance use disorder treatment services to residents of Oregon. Federal funds paid Serenity Lane for the services it provided to Medicare and Medicaid

Page 3 - COMPLAINT                                                        53518-76270 *2958285_2\RH/3/20/2018*

recipients.

12.     Had the U.S. Government known Serenity Lane billed for services that were not performed by a licensed provider, Medicaid and Medicare would have prohibited Serenity Lane from continuing to provide services to Medicare and Medicaid recipients.

## MEDICAID AND MEDICARE

13.     The Medicare program was enacted in 1965, and the Secretary of Health and Human Services regulates the administration of the program through the Centers for Medicare and Medicaid Services ("CMS"). See 42 C.F.R. 422.503(a).

14.     The Medicaid program was enacted in 1965 and is jointly administered and financed by the federal and state governments.

15.     This action involves improper Medicare and Medicaid reimbursements that were approved and paid by Medicaid and Medicare.

16.     Medicare and Medicaid are both considered "Federal health care programs." 42 U.S.C. § 1320a-7b.

17.     Federal law makes it a crime to submit false billings to the government for payment and requires that all submissions for payment be accurate. 18 U.S.C. § 1347.

18.     Medicaid, which is authorized under Title XIX of the federal Social Security Act, is a joint federal-state program designed to afford medical benefits to low-income individuals. See 42 U.S.C. § 1396 *et seq.*

19.     Medicaid is cooperatively funded by the federal and individual state governments, with the federal government paying the majority of most states' medical expenses.

/////

/////

Page 4 - COMPLAINT

## The Oregon Medicaid Program

20.     The Oregon Medicaid Program has set forth several regulations that govern

interns providing substance abuse services. They are as follows.

a.      410-172-0670 – Substance Use Disorder Treatment Services

(1)     Substance Use Disorder (SUD) treatment services include, but are not
limited to, screening; assessment; individual counseling; group counseling; individual
family, group or couple counseling; care coordination; medication-assisted treatment;
medication management; collection and handling of specimens for substance
analysis; interpretation services; detoxification for substance use disorders; synthetic
opioid treatment; and acupuncture.

(2)     Providers seeking reimbursement for the provision of substance use
disorder services within the scope of their practice under state law shall meet one of
the following qualifications: (a) Certificate issued by the Division as described in
OAR chapter 415 division 012; (b) Any facility that meets the definition of a
residential treatment facility for substance-dependent individuals under ORS 443.400
or a detoxification center as defined in ORS 430.306 shall have a certificate issued by
the Division as described in OAR chapter 415, division 012; (c) Synthetic opioid
treatment programs shall meet the requirements described in OAR chapter 415,
division 020; (d) Substance use detoxification programs shall meet the standards
described in OAR 415, chapter 050; (e) Physician or Physician Assistant licensed by
the State of Oregon; (f) Advanced Practice Nurse including Clinical Nurse Specialist
and Certified Nurse Practitioner licensed by the Oregon Board of Nursing; (g)
Professional Counselor or Marriage and Family Therapist licensed by the Oregon
Board of Licensed Professional Counselors and Therapists; (h) Clinical Social
Worker licensed by the Oregon Board of Licensed Social Workers; (i) Psychologist
licensed by the Oregon Board of Psychology; (j) Licensed Psychologist Associate
granted independent status as described in OAR 858-010-0039; (k) Licensed Master
Social Worker licensed by the Oregon Board of Licensed Social Workers as
described in OAR 877-015-0105; (L) Acupuncturist licensed by the Oregon Medical
Board.

(3)     Board registered intern providers shall be supervised by a paid provider
described in section (2)(g-i) of this rule under an active board approved plan of
practice and supervision and meet one of the following qualifications: (a)
Psychologist Associate Residents as described in OAR 858-010-0037; (b) Licensed
Psychologist Associate under continued supervision as described in OAR 858-010-
0038; (c) Licensed Professional Counselor intern or Marriage and Family Therapist
intern registered with the Oregon Board of Licensed Professional Counselors and
Therapists as described in OAR 833-050-0011; (d) Certificate of Clinical Social
Work Associate issued by the Oregon Board of Licensed Social Workers as described

in OAR 877-020-0009; (e) Registered bachelor of social work issued by the Oregon Board of Licensed Social Workers as described in OAR 877-015-0105.

(4)     Providers exempt from licensure or registration per ORS 675.090(f), 675.523(3), or 675.825(c) shall be employed by or contracted with a provider organization certified by the Authority under ORS 430.610 to 430.695 as described in (2)(a-d) of this rule and meet one of the following qualifications(a) Qualified mental health professional as defined in OAR 309-019-0125(8); (b) Qualified mental health associate as defined in OAR 309-019-0125(7); (c) Mental health intern as defined in OAR 309-019-0105(68); or (d) Peer-Support Specialist or Recovery Mentor as defined in OAR 410-180-0305(13); (e) Substance Use Disorder counselor certified by a national or state accrediting body

b.     OAR 309- 019- 0105(70) (formerly subsection 68) "Mental Health Intern" means an individual who meets qualifications for QMHA but does not have the necessary graduate degree in psychology, social work, or behavioral science field to meet the educational requirement of QMHP. The individual shall: (a) Be currently enrolled in a graduate program for a master's degree in psychology, social work, or in a behavioral science field; (b) Have a collaborative educational agreement with the CMHP or other provider and the graduate program; (c) Work within the scope of practice and competencies identified by the policies and procedures for credentialing of clinical staff as established by the provider; and (d) Receive, at a minimum, weekly supervision by a qualified clinical supervisor employed by the provider of services.

c.     OAR 309- 019- 0105 (93) "Qualified Mental Health Associate (QMHA)" means an individual delivering services under the direct supervision of a QMHP who meets the minimum qualifications as authorized by the LMHA or designee and specified in OAR 309-019-0125.

d.     OAR 309-019-0105(94) "Qualified Mental Health Professional (QMHP)" means a LMP or any other individual meeting the minimum qualifications as authorized by the LMHA or designee and specified in OAR 309-019-0125.

e.     OAR 309-019-0125(9) QMHAs shall demonstrate the ability to communicate effectively; understand mental health assessment, treatment, and service terminology as well as suicide risk assessment, lethal means counseling, and safety planning; and apply each of these concepts, implement skills development strategies, and identify, implement, and coordinate the services and supports identified in a service plan. In addition, QMHAs shall a meet the following minimum qualifications:(a) Bachelor's degree in a behavioral science field; or (b) A combination of at least three years of relevant work, education, training, or experience; or (c) A qualified Mental Health Intern, as defined in OAR 309-019-0105.

f.     OAR 309-019-0125(10) QMHPs shall demonstrate the ability to conduct an assessment including identifying precipitating events; gathering histories of mental and

Page 6 - COMPLAINT

physical health, substance use, past mental health services, and criminal justice contacts; assessing family, cultural, social, and work relationships; conducting a mental status examination; completing a DSM diagnosis; conducting best practice suicide risk assessments, lethal means counseling, and safety planning; writing and supervising the implementation of a service plan; and providing individual, family, or group therapy within the scope of their training. In addition, QMHPs shall meet the following minimum qualifications:(a) Bachelor's degree in nursing and licensed by the State of Oregon; (b) Bachelor's degree in occupational therapy and licensed by the State of Oregon; (c) Graduate degree in psychology; (d) Graduate degree in social work; (e) Graduate degree in recreational, art, or music therapy; (f) Graduate degree in a behavioral science field; or

(g)    A qualified Mental Health Intern, as defined in 309-019-0105.

## STATEMENT OF FACTS

### A. Background

21.    Serenity Lane provides addiction counseling to patients.

22.    Serenity Lane's organization NPI number is 1104934892.

23.    The services are mostly billed under HCPCS codes H0005 and H0015.

24.    Reimbursements to Serenity Lane from Medicaid can vary per month from $2,000 up to $32,000 for false submissions.

25.    The exact number varies based on number of Medicaid patients per month in Defendant's programs. There are typically 40 to 60 bills per month for services rendered by non-credentialed employees, and each bill has anywhere from 1 to 6 services rendered.

26.    The reimbursement range per service is between $45 and $90. H0005 is around $45. H0015 is around $86 to 90.

27.    Relator was employed by Defendant from March 2013 through March 2018 as the Director of Outpatient Services. Before that, he worked for Defendant from 2010 to 2013 as an Outpatient Counselor, Residential Counselor, and Admissions Counselor. He is a Certified Alcohol and Drug Counselor, Level 3 - (CADC III) and holds a National Certification as an

Page 7 - COMPLAINT                                          53518-76270 *2958285_2\RH/3/20/2018*

Alcohol and Drug Counselor (NCAC II). Relator's individual NPI number is 1497113765. His Oregon license number is 13-12-66.

28.     Relator never receives any of the money billed under his NPI. He is paid a salary and the revenue received from Medicaid goes directly to Serenity Lane.

### B.  Billing for Services Not Performed by a Licensed Provider

29.     Since at least 2015 through the present, Defendant is having non-certified, unsupervised and unlicensed employees provide behavioral health services to patients and then billing government funded insurance companies as if those services were provided by a licensed, credentialed person. The services are falsely billed by using a credentialed Defendant employee's NPI number. Relator is one of the employees whose NPI number Defendant uses for false billing.

30.     False claims are submitted from Defendant's Lane County/Eugene location, which is billed to Medicaid through Trillium (owned by Centene); in the Deschutes County/Bend location, which is billed to Medicaid through Pacific Source Community Solutions; and in the Douglas County/Roseburg office, which is billed to Medicaid through Umpqua Health Alliance.

31.     Serenity Lane does not have any education or licensing requirements for its employees who provide the behavioral health services.

32.     The counseling is provided by "students" who are employees not certified by the state of Oregon.

33.     Defendant calls the employees who provide the counseling students, but they are not actually students in the traditional sense that they are enrolled in an education program.

/////

53518-76270 *2958285_2\RH/3/20/2018*

34.     There are some exceptions to allowing non-certified persons to provide counseling services and bill under another's NPI number. However, none of these exceptions are present for Defendant.

35.     OAR 410-172-0670(2) sets forth the requirements that to bill for substance abuse services, individuals should hold one of several types of licenses. The employees that Defendant has providing services do not hold any type of license.

36.     OAR 410-172-0670(3) allows for an exception to the license requirement in subsection (2) if the person providing the services is an intern registered with the state of Oregon. Defendant employees are not interns registered with the state of Oregon, they are not interns of any academic or scholastic program.

37.     OAR 410-172-0670(4) allows for an exception to the license requirement in subsection (2) if the person providing the services meets certain qualifications, none of which are met by the employees providing services at Serenity Lane.

38.     Serenity Lane requires Relator to sign all of the students notes from counseling, but Relator is not present during the counseling or even in the same building most of the time. Defendant requires Relator and the other credentialed employees to sign the students notes because the students do not have certification. The manager signing a student's note is a requirement of the state for documentation and is done throughout their system.

39.     Serenity Lane also uses NPI numbers of additional employees other than Relator to bill Medicaid for services performed by non-certified students. Thomas Turner, NPI No. 1548620057, for the Bend office; Anthony (Tony) Haynes, NIP No. 1972053205, for the Roseburg office; Kara Litwiller, NPI No. 1164895561, for the Eugene mental health services (not addiction services).

Page 9 - COMPLAINT

40.     Serenity Lane bills Medicaid for the services provided as if Relator and the other certified counselors have provided the services.

41.     Relator talked with a provider relations person at Trillium, who specifically told Relator that on the billing, in order to use an NPI number on the statement, the person with the NPI number has to at least be in the same room of the service. If a student did a group session, the rendering provider NPI would at least have to be in the same room. Relator was not present in any of the services that his NPI number was used for when billing the services.

42.     Defendant submits claims to Medicaid using form CMS-1500. The form has a section 24J, which is where Relator's NPI number is falsely entered. 24J describes substance use disorder claims and requirements under the Oregon administrative rules. Students who provide the services do not meet the requirements under the Oregon administrative rules because they do not have a OHA (Oregon Health Authority) certification and enrollment criteria.

43.     Defendant is aware that it is submitting false claims for payment. Oregon Health authority sent a letter to Defendant in October 2016 reiterating that behavioral health services should be billed under the individual who did the service and Defendant ignored the letter and continued to bill for services that were provided by an unlicensed, uncredentialed employee.

## CLAIMS FOR RELIEF

**COUNT I.       Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(A)**

44.     Relator incorporates by reference each of the preceding paragraphs of this Complaint.

45.     This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729 *et seq.*, as amended.

53518-76270 *2958285_2\RH/3/20/2018*

46.    By virtue of the acts described above, the Defendant knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval, which resulted in countless millions of dollars of payments of false claims by the United States Government to the Defendant. All such false claims and acts are in violation of the FCA in general and specifically in violation of 31 U.S.C. § 3729(a)(1)(A).

47.    The acts described above induced the United States Government to pay or approve such false or fraudulent claims.

48.    In reliance on these false representations and claims, the United States Government, by and through its intermediaries, agents, and agencies, paid countless millions of dollars for services the Defendant contracted to provide that it otherwise would not have paid had the government been aware of Defendant' knowing violations of the FCA and the various rules and regulations of the Medicare, Medicaid, and other government funded medical programs.

49.    By reason of Defendant' acts, the United States has been damaged and continues to be damaged in substantial amounts to be determined at trial.

50.    Pursuant to the FCA, the Defendant is liable to the United States for a civil penalty of not less than $5,500 and not more than $21,563[1] for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of Defendant' actions.

/////

---

[1] Penalties raised from not less than $5,500 and not more than $11,000 to $10,781 and not more than $21,563 as of August 1, 2016. These adjusted amounts will apply only to civil penalties assessed after August 1, 2016, whose violations occurred after November 2, 2015.

**COUNT II.    Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(B)**

51.    Relator incorporates by reference each of the preceding paragraphs of this Complaint.

52.    This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729 *et seq.*, as amended.

53.    By virtue of the acts described above, the Defendant also knowingly made, used or caused to be made or used, false records and statements material to a false or fraudulent claim which resulted in millions of dollars of payments of false claims by the United States Government to the Defendant. All such false claims and acts are in violation of the FCA in general and specifically in violation of 31 U.S.C. § 3729(a)(1)(B).

54.    Every such payment by the United States to the Defendant was a product of a false claim and materially false statements made by Defendant.

55.    In reliance on these false representations and claims, the United States Government, by and through its intermediaries, agents, and agencies, paid countless millions of dollars for services the Defendant contracted to provide that it otherwise would not have paid had the government been aware of Defendant' knowing violations of the FCA and the various rules and regulations of the Medicare, Medicaid, and other government funded medical programs.

56.    By reason of Defendant' acts, the United States has been damaged and continues to be damaged in substantial amounts to be determined at trial.

57.    Pursuant to the FCA, the Defendant is liable to the United States for a civil penalty of not less than $5,500 and not more than $21,563 for each of the false or fraudulent

53518-76270 *2958285_2\RH/3/20/2018*

claims herein, plus three (3) times the amount of damages which the United States has sustained because of Defendant' actions.

**COUNT III.**      **Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(G)**

58.      Relator incorporates by reference each of the preceding paragraphs of this Complaint.

59.      The False Claims Act, 31 U.S.C. § 3729(a)(l)(G), imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

60.      Defendant knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Defendant received such compensation from the Government as a result of Defendant' false claims.

61.      Through the acts described above, by knowingly concealing money that was owed to the Government when, after Defendant knowingly received money through an illegal scheme, Defendant kept the profit they made off the government payments, Defendant knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to the Government.

62.      The United States has been damaged by all of the above fraud and illegal conduct in an as of yet undetermined amount.

63.      Pursuant to the FCA, the Defendant is liable to the United States for a civil penalty of not less than $5,500 and not more than $21,563 for each of the false or fraudulent

53518-76270 2958285_2\RH/3/20/2018

claims herein, plus three (3) times the amount of damages which the United States has sustained because of Defendant' actions.

**COUNT IV.    Violations of 42 U.S.C. § 1320a-7k**

64.    Relator incorporates by reference each of the preceding paragraphs of this Complaint.

65.    42 U.S.C. 1320a-7k is known as the "MEDICARE AND MEDICAID PROGRAM INTEGRITY PROVISIONS" in the Social Security Act. Section 1128J(d)(1) of the Social Security Act requires a person who has received an overpayment to report and return the overpayment to the Secretary, the state, an intermediary, a carrier, or a contractor, as appropriate, at the correct address, and to notify the Secretary, state, intermediary, carrier or contractor to whom the overpayment was returned in writing of the reason for the overpayment. Section 1128J(d)(2) of the Act requires that an overpayment be reported and "returned by the later of—(A) the date which is 60 days after the date on which the overpayment was identified; or (B) the date any corresponding cost report is due, if applicable." Section 1128J(d)(3) of the Act specifies that "any overpayment retained by a person after the deadline for reporting and returning an overpayment is an obligation (as defined in 31 U.S.C. 3729(b)(3)) . . . for purposes of 31 U.S.C. 3729."

66.    Pursuant to 42 U.S.C. 1320a-7k(4)(B) "the term 'overpayment' means any funds that a person receives or retains under subchapter XVIII or XIX to which the person, after applicable reconciliation, is not entitled under such subchapter." Serenity Lane has received funds pursuant to both subchapter XVIII or XIX.

67.    Serenity Lane constitutes a "person" under 42 U.S.C. 1320a-7k(d)(4)(C).

53518-76270 *2958285_2\RH/3/20/2018*

68.     Pursuant to 42 U.S.C. 1320a-7k, Serenity Lane's retention of funds received through the fraudulent scheme described above constitute overpayments that it was required to reimburse.

69.     Serenity Lane has not reimbursed the government the funds that it was overpaid with.

70.     Serenity Lane's actions therefore create liability under the False Claims Act.

71.     Pursuant to the FCA, the Defendant is liable to the United States and the State of Oregon for a civil penalty of not less than $5,500 and not more than $21,563 for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of Defendant' actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, the United States of America, through Relator, requests the Court for entry of judgment against the Defendant and the following relief:

A. That Defendant ceases and desists from further violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* and the related Medicare, Medicaid and other federally and state funded medical programs;

B. That the Court enter judgment against the Defendant in an amount equal to three times the amount of damages suffered by the United States because of Defendant' actions, plus a civil penalty of not less than $5,500 and not more than $21,563 for each false claim or certification in violation of the FCA;

C. That Relator be awarded the maximum amount allowed pursuant to section 3730(d) of the False Claims Act;

53518-76270 2958285_2\RH/3/20/2018

D. That Relator be awarded all costs of this action, including attorneys' fees, costs and
expenses pursuant to 31 U.S.C. § 3730(d); and

E. That the United States and Relator be granted such further relief as the court deems
equitable, just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, a jury trial is demanded.

Dated this 20th day of March, 2018.

JORDAN RAMIS PC

By: _____
RUSSELL D. GARRETT, OSB # 882111
russ.garrett@jordanramis.com
CHRISTOPHER K. DOLAN, OSB #922821
chris.dolan@jordanramis.com
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone:  (503) 598-7070
    Attorney(s) for Plaintiff Nathan Mart


BRIAN H. MAHANY,  WI Bar # 1065623
brian@mahanylaw.com
KATHERINE M. HOLIDAY, WI Bar # 1088722
kholiday@mahanylaw.com
MAHANY LAW
8112 West Bluemound Rd, Ste 101
Wausatosa WI 53213
Telephone:  (414) 258-2375
    *Anticipated Pro Hac Vice* Attorneys for
    Plaintiff Nathan Mart

Page 16 - COMPLAINT

53518-76270 *2958285_2\RH/3/20/2018*